May it please the Court, Sarah Costello v. Petitioner Prabh Sirmar Kaur. Here, the Court should find that the BIA's decision in this case, that Ms. Sirmar did not suffer past persecution, is wrongly decided. Ms. Sirmar was detained, beaten, threatened with rape by the Indian police, all on account of her familial relationship with her brother and his imputed political opinion. The BIA's finding that Ms. Sirmar did not suffer past persecution is simply not supported by substantial evidence. In this decision, the Board found Ms. Sirmar credible. This Court has found that absent an explicit adverse credibility finding, a witness's testimony must be accepted as true. This is also a pre-Real ID Act case, meaning that corroboration is not necessary. Is your client eligible for the new relief granted by deferred action, by chance? Your Honor, my client does have a child, a U.S. citizen child. But deferred action, the new presidential action, you know, right now, the U.S. citizen child, right now, at most, it's going to get her a work permit for three years with no promise of permanent residence, very different from asylum. If she's granted asylum, she can become a permanent resident in one year, she can become a citizen in five. It's a – I think she has to go for asylum. She does, Your Honor. And also, my reading of the process, we've been told in other cases that the government is notifying counsel of whether they are potentially under the President's executive order, proposed executive order. Yes. And have you been contacted? Yes, Your Honor. You have. Okay. Thank you. And can you see dual tracts or not? Yes, Your Honor. There's – it looks like a person with – even with a final order, as long as it was before the announcement date of November 20th, 2014, still would qualify for DAPA, for the Deferred Action Program. So going forward with this claim doesn't in any way prejudice my client's ability to receive DAPA. But not going forward with it would prejudice her ability to ever become, you know, in a concrete way, a permanent resident or a citizen. Well, let's – I guess, I mean, past persecution seems to be an issue here. And can you give me your best case with similar facts suggesting that this – what she suffered constitutes past persecution? Well, Your Honor, this Court has routinely found that physical harm, especially when it's repeated, constitutes past persecution. Chand v. INS. Which one? Chand v. INS, C-H-A-N-D, 22F3D, 1066. And then Ahmaud v. And what happened in Chand?  Repeatedly beaten, just as Ms. Tamar was repeatedly beaten. Go ahead. I'm sorry, just over – because was she repeatedly beaten over a night period? Is that what it was, over one evening period she was detained? She was detained. She was slapped. She was threatened with guns. Threatened with rape. Threatened with rape. I just – I've seen a number of cases. I just don't know if this reaches the mark. I'll look at Chand, but I'm curious to see what happened there to see if it's sufficiently similar. Absolutely, Your Honor. And I think this Court has also found that rape, I mean, obviously rape, threats of rape. Actual rape. Actual rape. But the Board in this case completely ignores the psychological consequence of being threatened with rape. So what's the case that talks about the psychological consequence, if that's what you're equating it to? Your Honor, I did not have that case before me. Oh, I'm so sorry. I do. Mashiri v. Ashcroft, 383F3D1112 talks about how psychological harm can also be found to be past persecution. And certainly – Now, did she testify about the psychological harm that she endured during this incident? She testified about what happened to her. But importantly, there was a psychological evaluation that specifically talked about and addressed her psychological harm and diagnosed her with PTSD. It makes sense that somebody who was diagnosed with PTSD and a survivor of torture would maybe not be able to completely explain what their feelings and what they've gone through before that. Did she exhaust that before the BIA and IJ, the psychological harm? I don't know that she did. She did argue that she suffered past persecution. And for exhaustion, there's no requirement that the argument be framed in exactly the same way. Well, but there has to be an opportunity for the agency to rule on the issue of the psychological harm. And if the agency is not given the opportunity to rule on the issue, then it's not fairly presented for us to rule on it. If that's the Court's finding, then I would ask that it be remanded. Well, that's just my observation. I'm just curious as to how we could review an issue that was not raised before the BIA such that the BIA could rule on it. Well, as I said, the doctrine of exhaustion should be applied broadly, particularly in the case of an asylum seeker who has documented proof of suffering these horrible things. Also, the IJ and the Board completely ignored the psychological evaluation. They completely ignored the psychological evaluation and the other facts contained in that evaluation. In doing so, they violated this Petitioner's right to due process. She has the right to a fundamentally fair hearing where she can present expert witnesses, she can present all of the testimony that is relevant to her case, and she can present all of the evidence that is in here because they never allow the psychological evaluation. She was essentially deprived of that right. Counsel, did you cite the Chan case and the Mashiri case in your brief? We did, Your Honor. Could you talk about the changed country conditions? Certainly, Your Honor. So the thing to understand here is that the alleged change is not individualized nor is it fundamental. The issue paper that the Board cites talks about general conditions for Sikhs. It does not address the condition for people like Ms. Samar, who are relatives of political activists, who are women, who are maybe considered to be a dissident by the Indian government. The issue paper only talks about the general conditions for Sikhs. And that's simply not sufficient for an individualized determination. Also, the change isn't fundamental. Maybe things have slightly improved from 2002 to 2008, but it's not a fundamental change. Just because there's a prime minister who's Sikh doesn't mean that the conditions for all Sikh activists are improved. Her political ground is that she's associated with her brother who was in the same party, wasn't it, of the prime minister? No, Your Honor. Actually, the prime minister is the Congress party. And her brother was associated with a Kali Dalman, an opposition party. Both under the Sikh religion. It's having to do with advocacy for an independent Sikh state, with advocacy against human rights abuses by the Congress party, having to do with also the Sikh religion, but all of those things. Not only limited to simply being Sikh as a religion or an ethnicity. So, Counsel, I just took a peek at Chan while you were there. And it appears that Mr. Chan was persecuted on several occasions over three different years. So do you think that's sufficiently different from your case that it shouldn't guide our decision? Well, Your Honor, the temporal length is different. Ms. Samara was not harmed over a three-year period. However, she was harmed multiple times. In the same incident, though. The same incident, perhaps, but drawn out over a series of a few days. She was, police came to her home, pointed a gun at her and her mother. They threatened to teach her a lesson. They detained her. They slapped her. They beat her. They hit her up against a wall, causing her to lose consciousness and suffer a two-inch laceration on her face. They threatened to rape her. You know, I don't see that the temporal duration of persecution is necessarily a requirement here. All right. Thank you, Counsel. You've exceeded your time, unless there are other questions. We'll give you a minute for rebuttal. Thank you, Your Honor. Thank you. Good morning. May it please the Court. I am Don G. Scroggin on behalf of the United States Attorney General in this case. I would suggest that it may be helpful in this case, which has a very long record, two very long briefs, to step back just for a moment to get an overview of the case. There is one central factual event that is the entire basis of Petitioner's claims, and there's a single legal issue before the Court to decide. The single factual event is the single arrest and detention of Mrs. Simar on November 17, 2002, over 12 years ago, when the police came to her home for a single purpose, and that was to arrest her brother for assault and battery. There's no contest as to those facts. Petitioner testified that the police ---- Is there a contest to the fact that she was actually arrested? There's no ---- I don't believe so. She's deemed credible, Your Honor. The fact in the court is held that when an alien is deemed credible, she's deemed to the court as accepts as true the thing she said happened to her, and she said that the police came to her home and arrested her for the reason, as she testified, because her brother was not at home. And it's clear from the context in the record as a whole that the reason the police arrested her was, as they said, and as she said in her testimony, was that it was a warning to her mother, since her brother was not at home. It was a warning to her mother? To her mother. The idea was that the police arrested her because her brother was not at home, and the mother was there seeing this, and the police said it was a warning to her to get her son. They wanted her son for criminal assault and battery, the beginning and end of the event. She subsequently says, and we must accept it's true, that she was beaten and mistreated that night. She was not raped. She was released the next day when her mother paid a bribe, not when her brother showed up, but when her mother paid a bribe to the police. That's the beginning and end of the factual event of this case. And so it seems like this case centers on what constitutes past persecution, and did what happened here constitute past persecution? So if overnight detention, combined with the physical abuse and threats of rape, does not amount to past persecution, I guess, what length of detention are you asserting or submitting, or conditions of confinement do amount to past persecution? Well, it's not my assertion, Your Honor. I'd rather look at what the Court has held in various cases. Well, I don't. Well, just highlight it. One of those is the case of Hoxa, H-O-X-H-A 319, Fed 3rd 1179, and the PIN site is 1182, where the Court says that a lifetime of harassment and mistreatment, including beating and threats of harm or death, are not so severe as to compel a finding of past persecution. Another case that we often refer to is Nagulco, N-A-G-O-U-L-K-O. I don't have the site with me. I'd be glad to provide it to the Court, if you wish. I'm sure the Court is familiar with the case. It is one that cites many lists of various scenarios that the Court has found do not rise, and some that do rise, to the level of persecution. The Court has held in cases that a single detention and beating, indeed several detentions and beatings, need not necessarily rise to the level of past persecution. And the Board, in light of those in its own precedents, concluded that a single detention, a threat of rape, no rape, a single beating, did not rise to the level of persecution in this case. And as the Board says, one further evidence of that is the Petitioner is not physically harmed. She admits there is no extensive physical harm. She says the family doctor treated her by giving her ointment. And what about the asserted psychological harm? I would, in this larger picture that I've asked the Court to step back from, I would think it's helpful to know that the psychological report is clearly a red herring. It has nothing to do with the case before the Court. The reason is the psychological report, from the first time the psychologist was hired to the time that, right before Petitioner filed her opening brief in this case, was for one purpose, and one purpose only. And that was to help avert an adverse credibility finding. The psychologist was tasked with interviewing and determining whether or not Petitioner was credible. His conclusion was that this event, which is clearly unfortunate. We do not minimize the misfortune of being detained and beaten overnight. The question is, does it rise to the level of persecution? And that we would maintain it clearly did not by the precedence of the Court. The psychologist's report has nothing to do with that. The psychologist's report has to do with whether or not Petitioner was credible. And Petitioner's statement in her brief that the psychologist's report was not considered is simply factually an error. If you look on, I would direct the Court to the immigration judge's decision, but also to the hearing transcript at 180 to 183. Those three pages, those four pages, show that both counsel agree the only function of the psychologist's report was for the purpose of addressing Petitioner's credibility. The immigration judge says, I don't think credibility is an issue in this case. I don't think I need to hear, therefore, from the psychologist as a witness. Throughout the history of the case and throughout all the hearings, the psychologist was put forth as a potential expert witness for the sole purpose of establishing Petitioner's credibility. And the immigration judge said, the quote from page 182 to 183, the immigration judge made clear that he's not bound by the psychologist finding her credible. But he did say, and this is what's most important, the I.J. said he would give the psychology report whatever weight is appropriate. It's clear from that, on page 182, 183, the immigration judge considered the report, and he gave it the weight that was appropriate. Petitioner asked this Court to reweigh the evidence, essentially something the Court cannot do. Moreover, the reason it was the immigration judge did not dwell further on the psychologist's report, and the reason I said it is a red herring, the immigration judge and the board – and this is critical to understanding this case – did not address credibility because they assumed Petitioner was credible. All of the decisions of the immigration judge of merit and the decisions of the board assume credibility. That credibility is off the table. And so the issue of the psychologist's report – Kennedy, I think we got the report. Can you address, before your time runs out, the change country condition? Yes, I can, Your Honor. The change country conditions, contrary to what Petitioner's brief maintains, are specific and they are quite directly related. This Court has held with respect to the change country conditions that they must be directly related and specifically. That is, the government rebutted any presumption of future harm by showing conditions that changed dramatically. In the 90s and before the 90s, the Sikhs and those supporting a new Sikh nation were persecuted. They were often killed. After, as the report says, the conditions changed in a fundamental way that Sikhs were no longer sought out. Most importantly, if you look at that report, and I would refer you to the statement that the Sikhs are no longer singled out for persecution and harm. And if they are, the government is on top of them, the press is on top of them, and there's no government approval of that. Government participation in any harm to Sikhs would be required for Petitioner to reveal here. And that's simply rebutted by that statement. It is specific. It doesn't have to be specific. It doesn't have to name Mrs. Seemar to be specific. But it must be linked, and it was linked here by the immigration judge, to her specific situation, which was that she feared, she said, that she as a former Sikh supporter would be persecuted by the government in India. I think in this context, the single legal issue is very important, and that is each one of the three dispositive grounds of the Board's denial must be proven by Petitioner by evidence in the record that is so overwhelming that this Court must decide that there was past persecution, that the past persecution was on account of an imputed political opinion, of which there's no evidence in the record from Petitioner, and third, that the evidence of rebuttal was insufficient. On each of those grounds, Petitioner has asked the Court to reweigh the evidence, perhaps in the hope that it might tip in Petitioner's favor. That was the standard of review before the Board, a preponderance of the evidence to tip one way or the other. Before this Court, however, the standard of review is the reasonable adjudicator standard. Petitioner's burden before this Court is to prove by evidence so overwhelming that no reasonable adjudicator could possibly do anything other than reject the Board's decisions. You won't be surprised, Counsel, that we were quite familiar with the standard of review on these cases. I know you are. But I simply was reminding the Court that those – I'm sure you're quite familiar with them. When it ranges between 40 to 60 percent of our DACA, I think we know the law. And for those reasons – We've made some of it. For those reasons, because the Petitioner has clearly not done that or alleged to do that, the Court should deny the petition for review. On an off point, because you represent the government, and I've been on several panels this week where the issue has come up of the potential effect of the President's pending executive order. Yes. Counsel says she's been contacted, they've been contacted. So the government has this Petitioner in focus as someone who might qualify? Is that what you're saying? She was contacted by me, Your Honor. I did specifically contact her. Indeed, I suggested that perhaps in light of those new memos, 12 executive orders and 12 memos from the Department of Homeland Security, we have no guidance yet at the whether there would be any benefit to any particular alien or not. Here, in this case, however, we are actively reviewing all our cases, including this one, to see if there might be some possibility of their applicability, and we will await further guidance ourselves. I contacted Petitioner for the purpose of suggesting that perhaps in light of that, since we have no guidance, that there might be eligibility, perhaps, that we might postpone this oral argument and wait, put the case in mediation until we had further guidance. Petitioner declined that for the reasons she's explained, and we're happy, therefore, to be here. We have a case for the Court to decide, and we would say that's a separate issue. No, that's fine. You've already pursued it, Mike. But we have pursued it. It says we have no guidance yet to implement them, but we are actively reviewing all our cases for that purpose, and we did so here. All right. Thank you, counsel. Rebuttal. The government essentially is making a prosecution v. persecution argument. And it's important for the Court to remember that this is a pre-real ID case, that the Petitioner need only prove one central or need not prove one central reason for the persecution. Also, it's apparent from the record that the police threatened her because she was the sister of a political activist in the record. Or the sister of someone who was being sought for having committed a criminal act. But the police, when they came to get her, they said, we will kill your whole family if you don't leave the party, that we are teaching you a lesson that you must remember forever. The police, their own words indicate that this was not just about a maybe legitimate prosecution of her brother for the fight with Ram Rana, but it was politically motivated. Also, Ms. Samara herself engaged in political activities. She was not a member of Akali Dalman, but she did accompany her brother to the rallies, and she was visible as a person who supported that party. The government's point about HACSA regarding the persecution is misplaced. HACSA, the persecutor was not the government. The persecutor was fellow, were Serbians, not associated with the government. It's a very different situation when you have the government actually persecuting somebody. All right. Counsel, could you wrap up, please? You've exceeded your time. Certainly. Also, I want to say, regarding changed country conditions, that whatever happened in the 1990s is just simply not relevant for what happened to Ms. Samara in 2002. And the fact is that the documents in the record do not show a fundamental and individualized change. Thank you. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted.
judges: Fisher, Rawlinson, Murguia